BLUM (UNITED STATES v.). See Case No. 14,614.

## Case No. 1,575.

### In re BLUMENTHAL.

[18 N. B. R. 555.][1]

District Court, S. D. New York. Aug. 10, 1878.

PARTNERSHIP—WHAT CONSTITUTES — BANKRUPTCY — DISCHARGE — FALSE SCHEDULES — PROPER BOOKS OF ACCOUNT.

1. The bankrupt entered into a contract with one S., by which he undertook to carry on the butchering business for S. as his agent and salesman. The contract provided that the "offal, feet, and the commission on hides and the usual slaughter-house perquisites" were to go to S., and the bankrupt was to receive, in

[1] [Reprinted by permission.]

lieu of wages, all he could make over and above the current price of cattle bought after deducting all expenses. It was also provided that the bankrupt should account daily with S., and pay over to him all moneys received, until S. was fully reimbursed for the stock and expenses. *Held*, that the agreement did not create a partnership.

2. In order to bar a discharge on the ground that the bankrupt swore falsely in the affidavit accompanying his schedules that he was indebted to a creditor named therein, or that he did not disclose to the assignee that the claim was false and fictitious, it must appear that he knew that the claim was false and fictitious.

3. The bankrupt kept proper books of account with customers, but it was conceded that he kept no books showing the transactions between himself and S. *Held*, that his dealings with S. were just as much a part of his business within the meaning of the statute as his dealings with his customers.

[In bankruptcy. In the matter of Isaac Blumenthal. Heard on application for discharge. Denied. The discharge was subsequently granted. In re Blumenthal, Case No. 1,576.]

Learned & Warren, for opposing creditors.
G. H. Yeaman, for bankrupt.

CHOATE, District Judge. This is an application for the discharge of the bankrupt. It is opposed on three grounds. (1) The swearing falsely in the affidavit accompanying his schedules that he was indebted to one Samuels in the sum of four thousand two hundred dollars, and (2) not disclosing the fact to his assignee that Samuels' claim, which was proved, was false and fictitious, and (3) that being a trader he did not keep proper books of account. The first and second charges are not sustained. The relation between Samuels and the bankrupt is claimed by the opposing creditors to have been that of partners. The question depends upon the construction of a written agreement by which the bankrupt undertook to carry on the butchering business for Samuels at his (Samuels') establishment, as expressed in the contract, "and his agent and salesman to purchase cattle, slaughter them and sell the beef, and to do all acts necessary in reference thereto." The contract provided that "the offal, feet, and the commission on hides, and the usual slaughter-house perquisites," in lieu of wages or other compensation, all he can make over and above the current price of cattle bought after deducting all expenses. It also provided that the bankrupt should account daily with Samuels, and pay over to him all the moneys received by him until Samuels was fully reimbursed for the stock and expenses. Samuels' claim was for a balance of money due to him under this contract. The agreement did not create a partnership. There was no sharing in the profits. Moreover, so far as these objections are concerned, it must appear that the bankrupt knew that the claim was false and fictitious. It is clear that there is no proof that the bankrupt knew or believed that Samuels had no right to prove his debt as a creditor. The contract itself is strong evidence that both parties understood that the bankrupt was an agent and not a partner of Samuels. As to the books kept by the bankrupt, the evidence shows that so far as the accounts between him and his customers were concerned though unskillfully kept, they were sufficient to show the true state of those accounts. But under agreement between him and Samuels he was constantly receiving and paying moneys from and to Samuels, and it was conceded on the argument that he kept no books showing these transactions, relying on Samuels to keep these accounts. It is insisted on behalf of the bankrupt that this was not his business, but Samuels' business. I see no ground for this claim however. The statute requiring proper books of account to be kept is for the prevention of fraud, and designed to secure to all parties dealing with a merchant or trader books of account from which the state of his business in case of bankruptcy can be truly ascertained. It is just as important that the moneys received by him from time to time, and his disposition of those moneys should appear, and that his current accounts with those who deal with him as customers should appear. If this is not done, the creditors have not the requisite information as to his assets and liabilities. The bankrupt's dealings with Samuels were just as much a part of his business, within the meaning of the statute, as his dealings with his customers. See In re Winsor [Case No. 17,885]; In re Archenbrown [Id. 505]. The rule withholding a discharge in default of proper books of account, though it may work hardship in individual cases, is no doubt wholesome in its general effect, and in this case I feel compelled to sustain this objection. Discharge refused.